# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF .COLUMBIA.

### BLACKFORD v. WILDER.

PATENTS; INTERFERENCE; PROOF OF REDUCTION TO PRACTICE; APPEL-
LATE PRACTICE; AFFIDAVITS AS TO LOSS OF EXHIBITS.

1. Where, in an interference case, it appears that the subject-matter
of the invention is very narrow — so narrow, that the proceedings
in the Patent Office prior to the declaration of interference showed
considerable difficulty in the formulation of patentable claims,
while, after interference declared, one of the parties moved the ex-
aminers-in-chief to report want of patentable novelty in the issue to
the Commissioner — and also that it was the combination of cer-
tain co-operating elements in the production of a new and useful
result which led to the declaration of the interference, it is inad-
missible to say, under such conditions, that one of such ele-
ments is subordinate and immaterial; but the evidence of reduc-
tion to practice must embrace them all, leaving nothing to
inference merely, *following* Breul v. Smith, 10 App. D. C. 180,
and Tracy v. Leslie, 14 App. D. C. 126.
2. While, in an interference case, affidavits will be permitted to show
or explain material changes that may have occurred by accident
or otherwise in an exhibit after its transmission to this court,
when the details of its construction might be of importance
in the determination of an issue, they will not be received in

contradiction or correction of the record of the proceedings in the Patent Office; *following* Talty v. District of Columbia, 20 App. D. C. 489.

No. 198. Patent Appeals. Submitted November 11, 1902. Decided December 3, 1902. Motion for rehearing, December 19, 1902. Decided February 11, 1903.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          *Reversed.*

The COURT in the opinion stated the case as follows:

This is an interference case on appeal from the Commissioner of Patents involving priority of invention of an improvement in oil burners.

The issue is defined in four counts, as follows:

" 1. In a burner the combination with a trough and perforated tubes situated thereabove and forming a combustion chamber, said trough having at its bottom a liquid-containing portion, and an enlarged upper vapor-receiving space, and a vertically disposed lighting member seated in the liquid-containing portion and extending upward between the walls of the enlarged vapor-receiving portion to form a vapor space at the side of the lighting member.

" 2. In a burner the combination of a trough and perforated tubes situated thereabove and forming a combustion chamber, a lighting member vertically disposed between the upwardly disposed walls of the trough, said trough having a contracted lower portion in which the lighting member is seated, and a vapor space above the contracted portion at the side of the vertically disposed lighting member.

" 3. In a burner, the combination of a trough and perforated tubes situated thereabove and forming a combustion chamber, said trough being contracted at its lower portion, and a vertically disposed lighting member seated in said contracted portion and extending upward between the upwardly disposed walls and constituting a vapor space in the upper portion of the trough at the side of the said lighting member.

" 4. In a burner, the combination of a trough and perforated tubes situated thereabove and forming a combustion

chamber, said trough being contracted at its lower portion and being provided with a wick seated in the contracted portion of the trough and extending upwardly between and distant from its upwardly disposed walls."

Appellee, William H. Wilder, is the senior party, having the date of April 19, 1897, for his application, as against that of August 23, 1897, for his opponent's, Atwell J. Blackford.

It is apparent from the record, as conceded by counsel respectively, that the award of priority turns upon the effect that may be given to the evidence relating particularly to four of the many exhibits of the parties, as proofs of conception and reduction to practice of the invention of the controversy. These are exhibits A and D of Blackford, upon whom is the burden of proof, and exhibits E and D of Wilder. The evidence tends to show that Blackford's exhibit A — now in the shape of a complete stove — was constructed early in 1895; that Wilder's exhibit E was constructed in April, 1896; that Blackford's exhibit D was constructed in November, 1896; and Wilder's exhibit D in January, 1897. The conclusions of the three tribunals of the Patent Office concerning the evidence relating to these exhibits are widely variant.

The examiner of interferences held that Blackford's exhibit A and Wilder's exhibit E both embodied the invention of the issue, and were reductions of the same to practice — the former in February and the latter in April, 1896. In accordance with this he awarded priority to Blackford.

The examiners-in-chief, on appeal, disagreed, the majority deciding in favor of Blackford. All of them agreed, however, in overruling the examiner of interferences in his conclusion as to Blackford's exhibit A.

The majority of the board made the following statement of the case as presented for decision: (pp. 281–282).

" These issues are very specific.

" The records of the two applications prove by the refusals of claims made for the burner, bowl, or trough alone, and for the burner with any kind of combustion apparatus, and by other facts disclosed in them, that, as should be expected,

every particular of each count of the issue is necessary to its patentability.

" The elements of each count include (1) a trough having a contracted lower portion and (2) a vertically extending lighting member seated in the lower contracted portion of the trough and extending upwardly between the walls of the trough.

" Counts 1, 2, and 3 require that there shall be a vapor space at the side of the lighting member, and count 4 calls for the wick (the lighting member of the other counts) extending upwardly between and distant from the upwardly disposed *walls* of the trough.

" This means that counts 1, 2, and 3 call for a vapor space at the side of the lighting member, and that count 4 calls for two vapor spaces, one on each side of the lighting member.

" There is a further and essential feature of each count which is expressed most clearly in count 1, but must be covered in all of the counts, namely, that the trough is an oil-containing trough.    By this is meant one that maintains a body of oil in and the length of a trough if the trough be straight, or around the trough if the trough be annular, during the whole time when the burner is in full heating action.

" Furthermore, although not expressly put into either of the counts, each of which is broad enough in language to cover an apparatus in which the oil is lifted to the vaporizing point entirely by the capillary action of the wick — which from the record appears to be an unpatentable device — the issue must, by the tenor of both specifications and by the treatment of their action by the examiner and by the arguments of the applicants during the prosecution of their applications, be restricted to burners which evaporate the oil from its surface by the heat of the walls of the burner.

" Both of the specifications of the included applications set forth this action of the burner as its essential action, and no burner which does not have this action is within the invention of either application so far as expressed by these issues.    Also the briefs for each party have the same statement of the mode of action of the burners of the issue.

" Wilder has priority of record at the date of [the] filing of his application, of which the present application is a division.    That date of record priority is April 19, 1897.

" The burden is on Blackford to put his date of invention back of that date.

" Blackford, in his preliminary statement, pleads conception in the latter part of the year 1895 and reduction to practice in the early part of the year 1896, and subsequent manufacture and sale.

" Blackford furnishes in evidence no sketches or drawings.    He has his exhibits B, C, A, H, and D, made, as he testifies, in the order here arranged.    Exhibit B is merely a trough, exhibit C is a burner and oil reservoir, exhibit A is a complete stove, exhibit H is a trough, and exhibit D is another complete stove.

" He also has exhibit G, which is a complete combustion chamber composed mainly of perforated tubes.    It is the ' combustion tubes ' of each count of the issue.

" It is testified to by Blackford as known before 1895 in use in other types of oil stoves.    It is proved that a combustion chamber of this sort was used with exhibits C and A.

" Exhibit D has its own combustion chamber of the same general type.

" Blackford testifies that his exhibit B was made in 1895 and was never operated; that his exhibit C was made in January, 1896.    Of exhibit C, Blackford testifies that he considers it as ' the wick type of stoves ' — *i. e.,* that type in which a wick feeds the oil to its end where the vapor is developed and burned.    In the present case the wick so operates as a lighting member, but thereafter the vapor is developed and rises from the surface of a body of oil."

Having agreed upon rejecting the claim founded on Blackford's exhibit A, they then took up his exhibit D, which they found to have been constructed and successfully operated in November, 1896.    This, they said, " is the only exhibit presented by either party as of date prior to his application, which impresses us at sight as having both the construction and operation of the present issue.    With the

specific issue and its specific mode of operation in mind, one is, at slight inspection of it, compelled to say: That is the issue, in structure and mode of operation."

This conclusion shifted the burden of proof to Wilder. His exhibit E was constructed in April, 1896. As produced it is incomplete. There is no vertically disposed lighting member shown, but the bowl or trough of the burner is adapted to hold oil and has the contracted lower portion required by the issue. Bearing in mind the specific narrowness of the issue the majority of the board regarded it necessary to show, in addition to the specific trough thereof, the existence and use of the vertically disposed lighting member or wick, seated in the contracted, liquid-containing portion of the trough and having a vapor space at its side above the contracted portion.

After reviewing the testimony at length, they expressed a conclusion as follows:

" There is no proof concerning this exhibit E that indicates that Wilder had advanced any further in producing and using it than an idea of an apparatus for both feeding oil into a V-shaped burner and keeping it there and lighting it there by the old flat or round or other shaped piece of asbestos, just as was done in the round-bottom oil-gas vapor burner, the difference being that he proposed, after heating the bowl by the oil and the piece of asbestos, to keep oil in the bowl, while the old oil-gas stoves got the burner so hot and so fed the oil that the oil flashed into vapor when it struck the bowl. We cannot conclude that this experiment of exhibit E included the structure of this issue or one having its mode of operation."

They next took up exhibit D (of Wilder) and after expressing the opinion that it did not in fact contain · the invention of the issue, felt themselves constrained, by its connection with the specifications of patent to Wilder issued on the original application of which this is a division, to hold that it comes within the mode of operation of the present application. The earliest date accorded by them, however, to this construction was late in December, 1896, or early in

January, 1897; hence, as it had been preceded, in their judg-
ment, by Blackford's construction of November, 1896, their
decision was for him.

Their opinion is of great length and reviews the important
evidence in detail.

The remaining examiner-in-chief expressed his dissent
from the conclusion of his associates at considerable length
also. His conclusion was that Blackford's exhibit D was not
completed in the fall of 1896, and that it was not a reduction
to practice of the invention of the issue. He found that
Wilder had a conception of the invention " in the early part
of 1896, and reduction to practice certainly as early as Janu-
ary, 1897," as shown by his exhibit E and the evidence relat-
ing to its construction. In order to reach this conclusion,
he said:

" This issue is broader than it is stated to be by my
associates, and it is satisfied by any liquid-holding trough
which is not filled by the wick at its upper portion, and which
is restricted at its lower portion so as to limit the evaporative
surface of the contained oil to approximately the require-
ments of combustion. It is immaterial whether the evapora-
tion takes place from the surface of the oil or from the
surface of the wick, or from both, as long as the surface which
sustains the oil is duly limited in its area, and operates to
expose to the heat of the flame only a relatively small surface
of oil. An examination of the records of the applications
of both parties shows that this is the breadth of the invention
to which the interfering claims were intended to and do
apply. Viewed in this light, said claims and the correspond-
ing counts of the issue are distinctly applicable to Wilder's
exhibit E."

The case next came before the Commissioner who reversed
the examiners-in-chief and adjudged priority to Wilder.

The Commissioner inclined to the view that Blackford's
exhibit D was constructed " in the fall of 1896," and that the
trough may have contained oil when in operation; but was
not satisfied that its trial demonstrated the practicability of
the invention necessary to a reduction to practice.

Taking the same broad view of the issue that was taken by the dissenting examiner-in-chief, he concluded: " It is believed that the evidence in regard to the making of exhibit E shows more clearly a conception of this invention by Wilder than does the making of exhibit D by Blackford. If D is effective for Blackford, E must be held to be equally effective for Wilder. This being true, Wilder is the first to conceive and the first to reduce to practice." On account of this conclusion he did not deem it necessary to determine the exact date of Wilder's exhibit D.

*Mr. Allen S. Pattison* for the appellant.

*Mr. Lysander Hill, Mr. James M. Spear* and *Mr. Ellis Spear* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

It would be an unprofitable task to review the evidence upon which this case has been submitted. That has been fully and fairly done in the decisions of the Patent Office tribunals, and a reference to them is all that is necessary.

Having stated the points of agreement and disagreement between them, we shall content ourselves with a brief statement of our own conclusions.

1. We agree with the majority of the examiners-in-chief in the conclusion, which the Commissioner does not deny, that Blackford's exhibit D was constructed in November, 1896.

2. Assuming the correctness of their view of the scope of the invention, we concur in their conclusion that the evidence of Blackford and his two corroborating witnesses sufficiently shows that construction to have been completed and reduced to practice some time in November, 1896.

3. As Wilder's exhibit D was not constructed until after Blackford's aforesaid construction and reduction to practice, his right to judgment of priority necessarily depends upon his exhibit E constructed in April, 1896.

We cannot agree with the Commissioner, that this exhibit,

in its condition when produced and in the light of the entire evidence relating to it, embodied the special issue of the interference in its construction and operation. The difference of opinion between the tribunals of the Patent Office respecting this exhibit proceeds substantially from their conflicting views as to the breadth of the issue of the declaration of interference.

From one point of view, the exhibit answers the required purpose because it shows the specified oil trough with the contracted lower portion as defined in the issue.

From the opposing point of view, it is wholly insufficient, because of the want of evidence to show that it had in combination the vertically disposed lighting member, seated in the contracted lower portion of the trough and extending upward with a vapor space at its side, which is called for specifically in the three first counts and substantially in the fourth one.

It is agreed all around that the subject-matter of invention is a narrow one. And it is to be noted in this connection, that when the case was before the examiners-in-chief, Wilder moved them to report to the Commissioner, as they had the authority to do by the rules, that there was no patentable novelty in the issue. The proceedings in the Patent Office preliminary to the allowance of each application show considerable difficulty in the formulation of patentable claims.

In Blackford's answer to some of the objections of the primary examiner, on May 2, 1898, he asked reconsideration on the ground of the combination of the V-shaped burner with his new form of wick; and this it was, he claimed, that enabled him to accomplish what former patented devices would not do. As late as September 12, 1899, the primary examiner notified him that the broadest allowable subject-matter of certain claims was the combination of combustion chamber, trough with lower contracted portion, and the wick extending upwardly between and distant from its upwardly disposed walls.

In a communication to Wilder under date of May 17, 1898, he made the following statement:

" The following is suggested as the broadest allowable claim to which the applicant is entitled in view of the state of the art:

" In an oil burner, an oil holder having a lower contracted portion and an upper enlarged portion, a vertical lighting wick seated in the lower contracted portion and extending upwardly between the walls of the holder, the arrangement of parts being such that a constant supply of oil can be maintained in the holder.

" If the applicant still believes himself to be the first inventor of the above subject-matter, he should file a claim corresponding in scope with that above suggested within fifteen days."

This view that the vertical lighting member, or wick, is an essential part of the combination, was then carried into the counts of the issue of interference.

Apparently, then, it was the combination of these co-operating elements in the production of a new and useful result that secured the recognition of the proper authority of the Patent Office and led to the declaration of interference. Under these conditions it is not admissible to say that one of these elements is subordinate and immaterial. The evidence of reduction to practice must embrace them all, leaving nothing to inference merely.

This conclusion is supported by numerous decisions in the Patent Office, and accords with the principle governing analogous cases in this and other courts. *Wolfender* v. *Price,* 83 O. G. 1801 (C. D. 1898, 87, 89), and cases cited; *Hammond* v. *Hart,* C. D. 1898, 52; *Streat* v. *Freckleton,* C. D. 1899, 85, 87; *Essex* v. *Woods,* C. D. 1899, 189; *Breul* v. *Smith,* 10 App. D. C. 180, 185; *Tracy* v. *Leslie,* 14 App. D. C. 126, 135.

For the reasons given we are of opinion that priority should have been awarded to Blackford.

The decision of the Commissioner will therefore be reversed. It is so ordered, and that this decision and the proceedings in this court be certified to him as required by law.                                    *Reversed.*

On behalf of the appellee, a motion, supported by affidavits, was filed December 19, 1902.    The object of the motion which was denied, is fully stated in the following opinion of the court, delivered by Mr. Justice SHEPARD, and filed February 11, 1903:

Founded on the alleged displacement of an important part of one of his exhibits, the appellee has filed a motion that this court shall " cause an investigation to be made and reported to this court with reference to the loss and recovery of said missing member of exhibit E, and to restore said member to its place in the exhibit, and to order the case to be heard or reheard, either by the Patent Office or by this Honorable Court, as to your honors may seem proper, upon the full and complete evidence originally taken and submitted to the Patent Office."

The motion is accompanied by affidavits and presents some features of unusual occurrence.    Some of the affidavits have been made by the appellee and others who are examined as witnesses on his behalf.    For obvious reasons, these cannot be considered in so far as they undertake to explain or add to the evidence set out in the record.

Other affidavits relate to the displacement of a part belonging to Wilder's exhibit E, pending the proceedings in the Patent Office.

On the hearing of the appeal, we were asked to consider an affidavit, then presented, relating to that subject.    It stated, substantially, that after the decision of the examiners-in-chief, in which they referred to the absence of the lighting member of exhibit E, affiant searched the box in which the exhibits had been kept, and found a kindler which fitted said exhibit and no other, and was by him placed therein; that he was present at the hearing before the Commissioner of Patents when the exhibit was produced, and the circumstances of the loss or displacement were recited and laid stress upon.    At the same time the appellant, Blackford, moved the court to grant the time and opportunity to operate his exhibit A, in order to demonstrate that both the board of ex-

aminers and the Commissioner had been in error in holding that said exhibit would not operate as required by the term of the issue. The appellee conceded that the bowl of said exhibit would contain oil while in operation, and the court declined to consume time with the proposed test.

No allusion was made to this concession in our opinion, because, having followed substantially the decision of the examiners-in-chief, we deemed it unimportant to discuss the evidence relating to said exhibit A as a reduction to practice of the invention of the issue, when we agreed with them that Blackford was entitled to priority under his exhibit D, in view of the conclusion reached regarding Wilder's said exhibit E. Hence without determining that question, their decision as to exhibit A was assumed to be correct, and no consideration was given it save as a mere circumstance in the history of the invention prior to the construction of his exhibit D. No reference was made to the aforesaid affidavit in the opinion, but it was not received for consideration for reasons hereafter stated.

The affidavit of the same affiant, in support of this motion, after reciting that the wick had been replaced on the hearing before the Commissioner — which recital will be quoted later — states, that during the preparation of this appeal, it was discovered that the kindler had again been displaced; that it was again found and replaced and brought into court, and after the hearing was tied in place to prevent further displacement. It does not state specifically that the exhibit, when produced on the argument before us, showed the same wick, or kindler in its proper position; though such is the direct inference. Our own recollection is, that the wick was not then in the exhibit. Had it been in place there would have been no substantial reason for the affidavit then offered, in the absence of a charge by the opposing party that the exhibit had been tampered with. Any error committed by the examiners-in-chief, traceable to the mere displacement of the wick when the exhibit was considered by them, could not only have been corrected by motion before them, but also by the Commissioner upon the exhibition to him, as has been

alleged, of the restored exhibit.  Then was the time and there was the place for inquiry into the changes in the condition of exhibits, if considered a matter of importance.

Now, whilst affidavits would be permitted to show or explain material changes that may have occurred, by accident or otherwise, in an exhibit after its transmission to this court, when the details of its construction might be of importance in the determination of an issue, they will not be received in contradiction or correction of the record of the proceedings in the tribunals of the Patent Office, which is the practical purpose of those now offered.  *Talty* v. *District of Columbia,* 20 App. D. C. 489.

As was said in that case — quoting an extract from an opinion of the Supreme Court of Iowa:  " We do not think it will do to admit affidavits on such questions in this court. If we admit one to contradict or explain the record, we may any number, and thus perpetually new issues would be made which are not contemplated in an appellate tribunal."

There is no hardship in the application of the rule in this case as there was in the case above cited.  As we have seen, the discovery of the alleged error of the examiners-in-chief, on account of the displacement of the wick in exhibit E, was discovered in ample time to call their attention to it while the matter was still within their control.  No such action was taken but the matter was expressly brought to the attention of the Commissioner, according to the following recital in the affidavit before referred to:  " Deponent further says that he was present at the hearing before the Commissioner and remembers distinctly that the kindler which he had found was in exhibit E and the circumstances of its loss or displacement were recited and laid stress upon, but no evidence was adduced identifying this kindler with that in the exhibit as filed."

On the other hand, the Commissioner's decision makes no mention whatever of any of these circumstances, but shows plainly that the exhibit, when under his examination, lacked the wick or ligting member.  In this connection we quote the following extract from his decision:

" Exhibit E consists of a V-shaped trough, essentially like that shown in Blackford's application. If the ordinary lighting member shown in the other exhibits is placed in this trough and the ordinary combustion tubes are used above, every element of the issue is present. There is no question but that the combustion tubes were intended to be, and were in fact, used with it, but a question is raised as to the lighting member. There is no lighting member in the exhibit now, and the testimony upon that point is not very full, but it is obvious upon mere inspection that there must have been a lighting member when the device was used, for it is well understood by those familiar with this art that a lighting member is necessary to start the operation of a burner of this kind. It was probably because of this knowledge that more specific testimony on this point was not produced."

The differences of opinion between the majority of the examiners-in-chief and the Commissioner (stated in our former opinion) are not founded on conflicting views in respect of the evidence relating to the kind of wick contained in exhibit E at the time of its alleged reduction to practice, but on opposing conclusions as to the necessity of showing that it contained the specific wick described in the issue, in order to establish reduction to practice of the invention of the issue. All agreed, as they were bound to do, that a wick or lighter was necessarily used in exhibit E, but disagreed as to the requirement of the issue in respect of its specific character.

The Commissioner found that the ordinary lighting members shown in the other exhibits would operate in the trough or bowl of exhibit E and answer, at the same time, what he held to be required by the issue. The examiners-in-chief held that the ordinary lighting member that had been used in other constructions, was not sufficient to answer the call for " a vertically disposed lighting member seated in the liquid-containing portion and extending upward between the walls of the enlarged vapor-receiving portion to form a vapor space at the side of the lighting member : " and that proof of the existence of the latter as a specific element of the combination was essential to give it the status of invention.

We concurred in this view of the examiners-in-chief as to the narrowness and the essential elements of the invention of the issue, and, hence, reversed the decision opposed thereto. The question of priority depended then, and was made to turn, upon the fact whether exhibit E contained a lighting member of the requisite character at the time of alleged construction and reduction to practice in 1896, and not upon what it may have shown in July, 1900, when it was exhibited in the course of taking the depositions in this proceeding. We found no sufficient evidence in the record of this essential fact, and a careful re-examination has not changed that conclusion.

It is evident from the testimony of Wilder, the inventor, that he regarded his invention as contained in the V-shaped burner, and it may well be that he considered the question of the character of the wick used as immaterial. It was probably on this account, as stated by the Commissioner, that " more specific testimony on this point was not produced." When asked by his own counsel to state " the essential point, or points of the invention in controversy as distinguished from the prior state of the art," he answered: " Take the oil-gas as representing the prior state of the art, combustion chambers, the bowls, initial lighting devices appear to be old, the essential difference being in the proportions of the bowl; * * * in short the line of demarcation is whether there is oil in the bowl or not; a shallow bowl of any shape appears to be old; a deep bowl sufficiently deep to carry a body of oil in normal burning, I should say was a necessary factor to make the thing new or distinguishable from the previous state of the art." The " oil-gas " was illustrated by his exhibit G, made in 1891, which he called " a vapor distributing burner " with an asbestos kindler " usually round or nearly so in form."

Nowhere in his testimony did he undertake to describe the particular wick then adapted to and used in the novel trough of exhibit E. No other witness described the form, or particular location of this lighting member when operated in 1896. The testimony of one of them — Brooks, the

secretary of the company with which Wilder was connected — rather tended to prove that the lighting member then used was nothing more than the old flat or round piece of asbestos, theretofore commonly used in the round bottom burners of familiar construction, and which, as we have seen in the foregoing extract from the Commissioner's decision, could be readily used in the V-shaped bowl of exhibit E. Having described the operation in testing exhibit E, with some minuteness as regards the shape of the bowl and the success of the experiment, this witness was asked how the flame was started. His answer was: "It was started from a match, with the use of a little piece of asbestos in the bowl for a starter."

The question of the patentability of the combination of the issue is not one for our consideration. All, however, concede that the margin of invention is a very narrow one — so narrow, indeed, that Wilder himself moved the examiners-in-chief to report want of patenable novelty to the Commissioner. Our opinion, before announced, that this view required proof of the existence of each specific feature of the combination, as described in the issue, in a construction to constitute its operation a reduction to practice, remains unchanged.

If we were to adopt the contrary view, or, failing that, to accept the evidence contained in the record as sufficient to establish the existence of the specific wick of the issue in exhibit E, at the time of its construction, the reasons therefor would bring us back to the reconsideration of Blackford's exhibit A and the evidence relating to its construction and early operation. And this last, if given the same latitude of construction and inference, especially when taken in connection with the admission that oil would remain in the bowl during its operation, would, for as strong reasons, impel us to hold that it embodied the conception, and was a reduction to practice of the disputed invention.

For the reasons given the motion will be *denied*. *It is so ordered.*